Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
Danielle S. Yamali (DY 4228)
dfutterman@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391

Brian Igel (BI 4574)
bigel@bilawfirm.com
BELLIZIO + IGEL PLLC
One Grand Central Place
305 Madison Avenue, 40th Floor
New York, New York 10165
Telephone:    (212)873-0250
Facsimile:    (646)395-1585
*Attorneys for Plaintiff*
*Off-White LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OFF-WHITE LLC,<br><br>*Plaintiff*<br><br>v.<br><br>A18059750343, A18120987426, A686869, A686899, AMAZONFACEMASK, ANDYGOTO, ANDYUIONS, BABYHOMEDH88, BEAUTYHOUSES, COMEYOU5566, DESIGNERCLOTHING3, DHGATECLOTHEY, DHGATEIONS, DHGATEKINGTUN, DHGATESFS , DOLLSOFLOUISRO, DONNYSTORE, GODYSIA, HELLOIDH, HOMEGOODSSTORE, JEANSSTORE, JJKINGS, JUBU, KLL1235, KUNDHGATEY, LACEWIGHOUSE, LIN19860827, LING16888, LING1888, LPPOSP, LUXURYOFFSTORE, MCLOTHING, MENGYADELOVE, METEORSTORE, MOINIUO, MOMOFASHIONSO, MYHOODIES, NAMELUXURY, NEWESSENTIALS, NEWSDHGATEI, OFFAIRWHITESTORE, | **CIVIL ACTION No.**<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR 1) A TEMPORARY RESTRAINING ORDER; 2) ORDER RESTRAINING MERCHANT STOREFRONTS AND DEFENDANTS' ASSETS WITH THE FINANCIAL INSTITUTIONS; 3) AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; 4) ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE AND 5) ORDER AUTHORIZING EXPEDITED DISCOVERY**<br><br>**FILED UNDER SEAL** |

OFFHOTWHITE, OW_STORE, PPDHGATES, QIANGDHGATES, QUICKCN, RACECN, RUNTIMUIJON, SONGDHGATES, TIDEATTIRE, UNIONBUYDO, WANKEYUN, WHATSYOURDH, YATESTORES, YUDANBA, YUDANBC, YUDANBD, YUDANBH, YUDANBI, ZHIYONGBA, ZHIYONGBC, ZHIYONGBD, ZHIYONGBH, ZHIYONGBI and ZZY003,

*Defendants*

## <u>TABLE OF CONTENTS</u>

I.    **INTRODUCTION**.................................................................................................. 1

II.   **STATEMENT OF RELEVANT FACTS**.......................................................... 3

III.   ARGUMENT ....................................................................................................... 3

A.   THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS .................. 3

        1.   **Defendants are Subject to Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1)** ................................................................... 4

        2.   **Exercising Personal Jurisdiction Over Defendants Comports with Due Process** .............................................................. 10

B.   PLAINTIFF IS ENTITLED TO AN *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION .............................................. 10

        1.   **Plaintiff Will Suffer Irreparable Harm in the Absence of an Injunction Leaving Plaintiff with No Adequate Remedy at Law** ....... 12

        2.   **Plaintiff is Likely to Prevail on the Merits of Its Lanham Act Claims** .............................................................................. 14

        3.   **Plaintiff is Likely to Prevail on Its State Law Claims**.......................... 15

        4.   **The Balance of Hardships Favors Plaintiff** ........................... 15

        5.   **Enjoining Defendants from Using the Off-White Marks Will Serve the Public Interest** ........................................................... 16

    C.   **PLAINTIFF IS ENTITLED TO AN ORDER 1) PREVENTING THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING DEFENDANTS' MERCHANT STOREFRONTS** ......................................... 16

        1.   **Defendants' Assets Must be Frozen** ...................................... 16

        2.   **Defendants' User Accounts and Merchant Storefronts Must be Frozen** ...................................................................... 18

D. PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE OF PROCESS BY ELECTRONIC MEANS .................... 18

E.   PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING EXPEDITED DISCOVERY.................................................................................... 20

F.   PLAINTIFF'S REQUEST FOR A SECURITY BOND IN THE AMOUNT OF $5,000 IS ADEQUATE ...................................................................... 21

IV.   CONCLUSION ................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.*, No. 94 Civ. 5620 (JFK), 1994 U.S. Dist. LEXIS 18457 (S.D.N.Y. Dec. 28, 1994). .................................... 21

*Allstar Marketing Group, LLC v. 123 Beads Store, et al.*, 19-cv-3184-AJN (S.D.N.Y. Apr. 10, 2019) .............................................................................................................. 6

*Allstar Marketing Group, LLC v. 178623, et al.*, 19-cv-3186-AJN (S.D.N.Y. Apr. 10, 2019) ............................................................................................................................ 6

*Allstar Marketing Group, LLC v. 24x7, et al.*, No. 18-cv-9043-JSR (S.D.N.Y. Oct. 3, 2018) ............................................................................................................................ 7

*Allstar Marketing Group, LLC v. bigbigdream320, et al.*, 19-cv-3182-AJN (S.D.N.Y. Apr. 10, 2019) ...................................................................................................... 6

*Audiovox Corp v. S. China Enter., Inc.*, 2012 U.S. Dist. LEXIS 104656 (S.D.N.Y. Jul. 26, 2012) .......................................................................................................... 8

*AW Licensing, LLC v. Bao*, No. 15- CV-1373, 2015 U.S. Dist. LEXIS 177101 (S.D.N.Y. Apr. 1, 2015) .............................................................................................. 1, 18, 19

*Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005) .................................................... 21

*Balenciaga Am., Inc. v. Dollinger*, No. 10 Civ. 2912 (LTS), 2010 U.S. Dist. LEXIS 107733 (S.D.N.Y. Oct. 8, 2010) .................................................................................. 17

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ........................................... 3, 4, 9, 10

*Best Van Lines, Inc. v. Walker*, No. 03 Civ. 6585 (GEL), 2004 U.S. Dist. LEXIS 7830 (S.D.N.Y. May 4, 2004) .................................................................................................. 9

*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) ................................................................ 8

*Broad. Music, Inc. v. Prana Hosp.*, Inc., 158 F. Supp. 3d 184 (S.D.N.Y. 2016) ........................ 16

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (U.S. 1985) ...................................................... 10

*Calder v. Jones*, 465 U.S. 783 (1984) ........................................................................................ 10

*Cartier v. Seah LLC*, 598 F. Supp. 2d 422 (S.D.N.Y. 2009) ...................................................... 7

*Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010) .............................. 4, 5, 7

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000) .................................. 4, 5

*CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127 (E.D.N.Y. 2011) ........................ 13

*Dama S.P.A. v. Doe*, No. 15-cv-4528 (VM), 2015 U.S. Dist. LEXIS 178076 (S.D.N.Y. June 12, 2015) .............................................................................................. 18, 19, 20

*Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975 (2d Cir. 1996)........................................................ 21

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006)............................................................. 13

*Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458 (S.D.N.Y. 2008).................... 3

*EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458(JS)(ETB),2012 U.S. Dist. LEXIS 78088 (E.D.N.Y. June 4, 2012) ................................................................ 5, 6, 7, 8

*Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168 (2d Cir. 2000)).......................... 12

*Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368 (S.D.N.Y. 2010) ......... 14, 15

*FTC v. PCCare247 Inc.*, 2013 U.S. Dist. LEXIS 31969 (S.D.N.Y. Mar. 7, 2013)...................... 19

*Grand v. Schwartz*, No. 15 Civ. 8779, 2016 U.S. Dist. LEXIS 61606 (S.D.N.Y. May 1, 2016) .......................................................................................................................................... 5

*Gucci Am. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014).......................................................... 17

*Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87 (S.D.N.Y. 2015) ...................................... 4, 18

*Gucci America, Inc., et al v. Alibaba Group Holding LTD, et al*, No. 1:15-cv-03784 (PKC) (S.D.N.Y. June 23, 2015) .................................................................................................. 1

*Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449 (S.D.N.Y. 2000) .................... 7

*Ideavillage Products Corp. v. 1yuyan1, et al.*, No. 18-cv-10000-NRB (S.D.N.Y. Oct. 30, 2018) .......................................................................................................................................... 6

*Ideavillage Products Corp. v. 207058772, et al.*, No. 18-cv-6512-VM (S.D.N.Y. July 19, 2018) .......................................................................................................................................... 7

*Ideavillage Products Corp. v. 29shyans2012, et al.*, No. 18-cv-6266-AT (S.D.N.Y. July 11, 2018) .................................................................................................................................... 7

*Ideavillage Products Corp. v. 666668, et al.*, No. 18-cv-6850-CM (S.D.N.Y. July 31, 2018) .......................................................................................................................................... 7

*Ideavillage Products Corp. v. 711market, et al.*, No. 18-cv-7832-JMF (S.D.N.Y. Aug. 28, 2018) .......................................................................................................................................... 7

*Ideavillage Products Corp. v. Aarhus, et al.*, No. 18-cv-2739-JGK (S.D.N.Y. April 11, 2018) .......................................................................................................................................... 7

*Ideavillage Products Corp. v. abc789456, et al.*, No. 18-cv-2962-NRB (S.D.N.Y. April 11, 2018) .................................................................................................................................... 7

*Ideavillage Products Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., Ltd., et al.*, No. 17-cv-9099 (JMF) (S.D.N.Y. Nov. 21, 2017)........................................................... 1

*Ideavillage Products Corp. v. Dongguan Shipai Loofah Sponge Commodity Factory, et al.*, No. 18-cv-901-PGG (S.D.N.Y. Feb. 1, 2018) ..................................................... 6, 7

*Ideavillage Products Corp. v. longteng, et al.,* No. 18-cv-7329-AT (S.D.N.Y. Aug. 14, 2018) ............................................................................................................... 7

*Ideavillage Products Corp. v. OhmyGod 1, et al.*, No. 18-cv-9999-RA (S.D.N.Y. Nov. 15, 2018) ............................................................................................................. 6

*In re Vuitton et Fils, S.A.*, 606 F.2d (2d Cir. 1979) .......................................................... 1

*Intenze Products, Inc. v. 1586, et al.,* No. 18-cv-4611-RWS (S.D.N.Y. May 24, 2018) .............. 7

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ........................................................ 3

*JLM Couture, Inc. v. Aimibridal, et al.,* No. 18-cv-1565-JMF (S.D.N.Y. Feb. 21, 2018) ......... 1, 7

*Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 1:12-cv-06283 (VSB), 2012 U.S. Dist. LEXIS 153137 (S.D.N.Y. Oct. 24, 2012) ........................................................... 1

*Lechner v. Marco-Domo Intnationales Interieur GmbH*, No. 03 Civ. 5664 (JGK), 2005 U.S. Dist. LEXIS 4022 (S.D.N.Y. Mar. 10, 2005) ........................................... 10

*Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013) ................................... 3, 4

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15 Civ. 8459 (LGS), 2016 U.S. Dist. LEXIS 89149 (S.D.N.Y. July 8, 2016) ............................................. 5

*Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224 (2d Cir. 1992) .................................................................................................... 12

*Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532 (2d Cir. 2005) .................................................................................................... 12

*Mattel, Inc. v. 162275898, et al.,* No. 18-cv-8821-AJN (S.D.N.Y. Sept. 26, 2018) ................... 7

*Mattel, Inc. v. 1994_honeymoon, et al.*, No. 18-cv-10427 (S.D.N.Y. Nov. 9, 2018) ................ 6

*Mattel, Inc. v. 2012shiningroom2012, et al.*, No. 18-cv-11648-PKC (S.D.N.Y. Dec. 13, 2018) .............................................................................................................. 6

*Mattel, Inc. v. 2013CheapBuy, et al.*, No. 18-cv-11647-PKC (S.D.N.Y. Dec. 13, 2018) ............. 6

*Mattel, Inc. v. 276470, et al.*, No. 18-cv-10440-KPF (S.D.N.Y. Nov. 9, 2018) ....................... 6

*Mattel, Inc. v. 86755, et al.,* No. 18-cv-8825-JSR (S.D.N.Y. Sept. 26, 2018) ...................... 21

*Mattel, Inc. v. Aaron's Fashion Store, et al.*, Case No. 18-cv-10437-KPF (S.D.N.Y. Nov. 9, 2018) ............................................................................................................ 6

*Mattel, Inc. v. betterlover, et al.*, No. 18-cv-11644-PKC (S.D.N.Y. Dec. 13, 2018) ................. 6

*McGraw-Hill Global Educ. Holdings LLC v. Khan*, 323 F. Supp. 3d 488 (S.D.N.Y. 2018) ......... 8

*Milliken v. Meyer*, 311 U.S. 457 (1940) ....................................................................... 10

*Mitchell Grp. USA LLC v. Udeh*, No. 14-cv-5745,2015 U.S. Dist. LEXIS 18801 (E.D.N.Y. Feb. 17, 2015) ................................................................................. 13

*Moose Toys Pty LTD, et al. v. adition, et al.*, No. 18-cv-9262-AJN (S.D.N.Y. Oct. 10, 2018) ................................................................................................................. 6

*Moose Toys Pty Ltd. et al., v. 963, et al.*, No. 18-cv-2187-VEC (S.D.N.Y. April 2, 2018) .......... 7

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) ................................ 20

*N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514 (S.D.N.Y. 2013) .............. 15

*N. Atl. Operating Co. v. Evergreen Distribs., LLC*, No. 13-CV-4974 (ERK) (VMS), 2013 U.S. Dist. LEXIS 147835 (E.D.N.Y. Sep. 27, 2013) ..................................................... 13

*N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010) ....... 16

*National Association for Stock Car Auto Racing, Inc. v. Does*, 584 F. Supp. 2d 824 (W.D.N.C. 2008) .................................................................................................... 20

*North Face Apparel Corp. v. TC Fashions, Inc.*, 2006 U.S. Dist LEXIS 14226 (S.D.N.Y. Mar. 30, 2006) ..................................................................................................... 17

*Off-White LLC v. 5hk5584, et al.*, No. 19-cv-672-RA (S.D.N.Y. Jan. 24, 2019) ......................... 6

*Off-White LLC v. Adagio, et al.*, No. 19-cv-676-RA (S.D.N.Y. Jan. 24, 2019) ......................... 6

*Off-White LLC v. Ali Jr., et al.*, No. 19-cv-1775-PAE (S.D.N.Y. Feb. 26, 2019) ......................... 6

*Off-White LLC v. Amazon001, et al.*, No. 19-cv-2067-JMF (S.D.N.Y. Mar. 7, 2019)................. 6

*Off-White LLC v. Baoding Springru Trade Co., Ltd., et al.*, No. 19-cv-674-RA (S.D.N.Y. Jan. 24, 2019) ..................................................................................................... 6

*Off-White v. 6014350 et al.,* No. 18-cv-5322-GBD (S.D.N.Y. June 13, 2018) ............................ 7

*Off-White, LLC v. A445995685, et al.*, No. 18-cv-2009-LGS (S.D.N.Y. March 27, 2018) .......... 7

*Polaroid Corp. v. Polarad Elecs. Corp*. 287 F.2d 492 (2d Cir. 1961) ....................................... 14

*Richemont N. Am., Inc. v. Linda Lin Huang*, No. 12 Civ. 4443 (KBF), 2013 U.S. Dist. LEXIS 136790 (S.D.N.Y. Sep. 24, 2013) ............................................................... 15

*Rolex Watch, U.S.A., Inc. v. Pharel*, 2011 U.S. Dist. LEXIS 32249 (E.D.N.Y. Mar. 11, 2011) ........................................................................................................................ 9

*Rovio Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store, et al.*, No. 17-cv-4884-KPF (S.D.N.Y. June 28, 2017) ..................................................... 21

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) ................................................................. 13

*SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 U.S. Dist. LEXIS 11480 (S.D.N.Y. Feb. 8, 2009) .................................................................................................... 19

*Skyrocket, LLC d/b/a Skyrocket Toys LLC v. 2791383638, et al.*, No. 18-cv-11279-AT (S.D.N.Y. Dec. 4, 2018)..............................................................................6

*Skyrocket, LLC d/b/a Skyrocket Toys LLC v. 5ATOY Store, et al.*, No. 18-cv-11280-AT (S.D.N.Y. Dec. 4, 2018)..............................................................................6

*Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100 (2d Cir. 2006)................4

*Spin Master Ltd. and Spin Master, Inc. v. 13385184960@163.com, et al.*, Case No. 18-cv-10524-LGS (S.D.N.Y. Nov. 13, 2018) ..........................................6

*Spin Master Ltd. and Spin Master, Inc. v. 158, et al.*, No. 18-cv-1774-PAE (Feb. 27, 2018) ...................................................................................................7

*Spin Master Ltd. and Spin Master, Inc. v. 21CCN, et al.*, No. 18-cv-11086-RA (S.D.N.Y. Nov. 29, 2018) ..........................................................................6

*Spin Master Ltd. and Spin Master, Inc. v. Alisy, et al.*, No. 18-cv-543-PGG, Dkt. 16 (S.D.N.Y. Jan. 22, 2018) ....................................................................7

*Spin Master Ltd., et al v. Alvy, et al.*, No. 19-cv-3452-LGS (S.D.N.Y. Apr. 24, 2019)................6

*Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329 (S.D.N.Y. 2015) .................... 19, 20

*Tapestry, Inc., et al. v. baoqingtianff, et al.,* No. 18-cv-7650-PAE (S.D.N.Y. Aug. 22, 2018) ...................................................................................................7

*Thomas Publ'g Co. v. Indus. Quick Search*, 237 F. Supp. 2d 489 (S.D.N.Y. 2002) .....................6

*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010) ......................................... 14

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F.Supp.2d 515 (S.D.N.Y. 2011); ........... 13

*Warner Bros. Entm't Inc. v. Doe,* No. 14-CV-3492 (KPF), 2014 U.S. Dist. LEXIS 190098 (S.D.N.Y. May 29, 2014)...................................................................17

*William Mark Corporation v. 1&cc, et al.,* No. 18-cv-3889-RA (S.D.N.Y. May 2, 2018)...........7

*William Mark Corporation v. 1104520362, et al.,* No. 18-cv-6715-PAC (S.D.N.Y. July 26, 2018) .................................................................................................7

*WOW Virtual Reality, Inc. v. 2013*passionate, et al.,* No. 18-cv-8071-VEC (S.D.N.Y. Sept. 5, 2018) ........................................................................................7

*WOW Virtual Reality, Inc. v. Bienbest, et al.,* No. 18-cv-3305-VEC (S.D.N.Y. April 17, 2018) ...................................................................................................7

*WowWee Group Limited, et al. v. Meirly, et al.*, No. 18-cv-706-AJN (S.D.N.Y. Jan. 26, 2018) ...................................................................................................7

*Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238 (2d Cir. 2009)................................................ 13, 14

**Statutes**

15 U.S.C. § 1057(b) ................................................................................................ 14

15 U.S.C. § 1116(d)(1)(a) ....................................................................................... 11

15 U.S.C. § 1117(a) ................................................................................................ 17

Fed. R. Civ. P. 26(d)(1) ........................................................................................... 21

Fed. R. Civ. P. 4 ................................................................................. 10, 18, 19, 20

Fed. R. Civ. P. 65(b) ............................................................................................... 11

N.Y. C.P.L.R. § 302 .................................................................................................. 3

**Other Authorities**

The Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents
    in Civil and Commercial Matters, November 15, 1965, Article ...................................... 19

**GLOSSARY**

| Term | Definition |
|---|---|
| **Plaintiff or Off-White** | Off-White LLC |
| **Defendants** | a18059750343, a18120987426, a686869, a686899, amazonfacemask, andygoto, andyuions, babyhomedh88, beautyhouses, comeyou5566, designerclothing3, dhgateclothey, dhgateions, dhgatekingtun, dhgatesfs , dollsofflouisro, donnystore, godysia, helloidh, homegoodsstore, jeansstore, jjkings, jubu, kll1235, kundhgatey, lacewighouse, lin19860827, ling16888, ling1888, lpposp, luxuryoffstore, mclothing, mengyadelove, meteorstore, moiniuo, momofashionso, myhoodies, nameluxury, newessentials, newsdhgatei, offairwhitestore, offhotwhite, ow_store, ppdhgates, qiangdhgates, quickcn, racecn, runtimuijon, songdhgates, tideattire, unionbuydo, wankeyun, whatsyourdh, yatestores, yudanba, yudanbc, yudanbd, yudanbh, yudanbi, zhiyongba, zhiyongbc, zhiyongbd, zhiyongbh, zhiyongbi and zzy003 |
| **DHgate** | Dunhuang Group d/b/a DHgate.com, an online marketplace and e-commerce platform which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their wholesale and retail products originating from China directly to consumers worldwide and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *Ex Parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **Abloh Dec.** | Declaration of Virgil Abloh in Support of Plaintiff's Application |
| **Drangel Dec.** | Declaration of Jason M. Drangel in Support of Plaintiff's Application |
| **Off-White Products** | A young, successful luxury fashion label founded by |

| | |
|---|---|
| | American creative designer Virgil Abloh, specializing in men's and women's lifestyle and high-end streetwear, as well as shoes, accessories, jewelry, homeware and other ready-made goods |
| **Off-White Registrations** | U.S. Trademark Registration Nos.: 5,119,602 for "OFF WHITE" for a variety of goods in Class 25 with a constructive date of first use of January 25, 2012; 5,713,397 for "OFF-WHITE" for a variety of goods in Class 25; 5,710,328 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 9; 5,572,836 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 25; 5,710,287 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 14; 5,150,712 for  for a variety of goods in Class 18 and 25; 5,710,288 for  for a variety of goods in Class 14; 5,307,806 for  for a variety of goods in Class 18 and 25; 5,835,552 for  for a variety of goods in Class 9; 5,387,983 for  for a variety of goods in Class 25; 5,445,222 for  for a variety of goods in Class 25; 5,800,414 for  for a variety of goods in Class 9 and 25; 5,681,805 for  for a variety of goods in Class 9; 5,663,133 for  for a variety of goods in Class 25; 6,054,044 for  for a variety of goods in Class 25; 6,272,565 for  for a variety of goods in Class 25; |

x

| | |
|---|---|
| | 6,290,768 for  for a variety of goods in Class 25; 6,114,562 for  for a variety of goods in Class 25;    6,131,346 for  for a variety of goods in Class 18; 6,035,585 for  for a variety of goods in Class 25; and 6,137,880 for    for a variety of goods in Class 25 |
| **Off-White Application** | U.S. Trademark Serial Application No. 88/041,456 for , for a variety of goods in Class 18 and Class 25 |
| **Off-White Marks** | The Marks covered by the Off-White Registrations and Off-White Application |
| **Counterfeit Products** | Products bearing or used in connection with the Off-White Marks, and/or products in packaging and/or containing labels bearing the Off-White Marks, and/or bearing or used in connection with marks that are confusingly similar to the Off-White Marks and/or products that are identical or confusingly similar to the Off-White Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as DHgate, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or |

| | assets of Defendants (whether said assets are located in the U.S. or abroad) |
|---|---|
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | Any and all banks, financial institutions, credit card companies and payment processing agencies, such as DHgate (*e.g.*, DHpay.com), PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer") and PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants |
| **Third Party Service Providers** | Online platforms, including, without limitation, those owned and operated, directly or indirectly by DHgate, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

## I.    **INTRODUCTION**

Pursuant to and in accordance with the Federal Rules of Civil Procedure, Plaintiff submits this memorandum of law in support of its *ex parte* Application in light of Defendants' intentional and willful offering for sale and/or sales of Counterfeit Products.[1]  Courts grant *ex parte* applications for relief in similar matters[2] and Plaintiff requests that the Court grant its Application.

DHgate is an online marketplace platform which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York.  (Drangel Dec., ¶ 3.) Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their respective User Accounts and Merchant Storefronts on DHgate. (Abloh Dec., ¶ 17; Drangel Dec., ¶ 14.)  Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and market, distribute and ship such products to consumers throughout the world, including New York.  (Abloh Dec., ¶¶ 17-19; Drangel Dec., ¶¶ 14-15, Ex. A.)  Third-party merchants, like Defendants, often use evasive tactics like aliases, false addresses and other incomplete identification information to conceal their identities and avoid detection.  (Drangel Dec., ¶¶ 9-12.)  In fact, Defendants' User Accounts and Merchant Storefronts are either devoid of any or contain incomplete information regarding Defendants' true identities, locations and contact

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

[2] *See In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief); *see also*, *e.g.*, *JLM Couture, Inc. v. Aimibridal, et al.*, No. 18-cv-1565-JMF, Dkt. 18 (S.D.N.Y. Feb. 21, 2018); *Ideavillage Products Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., Ltd., et al.*, No. 17-cv-9099 (JMF), Dkt. 19 (S.D.N.Y. Nov. 27, 2017); *Gucci America, Inc., et al v. Alibaba Group Holding LTD, et al*, No. 1:15-cv-03784 (PKC) (S.D.N.Y. June 23, 2015); *AW Licensing, LLC v. Bao*, No. 15- CV-1373, 2015 U.S. Dist. LEXIS 177101, at *2-3 (S.D.N.Y. Apr. 1, 2015); *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 1:12-cv-06283 (VSB), 2012 U.S. Dist. LEXIS 153137, at *3-4 (S.D.N.Y. Oct. 24, 2012).

information, making it virtually impossible for Plaintiff to obtain independently. (Drangel Dec., ¶¶ 23-24.)

Without Plaintiff's authorization or consent, Defendants were and/or currently are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to consumers located in the U.S., including New York, through their Merchant Storefronts. (Abloh Dec., ¶¶ 17-19; Drangel Dec., ¶¶ 14-15.) Defendants' aforementioned actions have caused and will continue to cause irreparable harm to Plaintiff's goodwill and reputation as well as to the unassuming consumers who will continue to believe that Defendants' inferior and potentially dangerous Counterfeit Products are authorized, sponsored, approved, endorsed and/or licensed by Plaintiff, when, in fact, they are not. (Abloh Dec., ¶ 22.)

Plaintiff's request for *ex parte* relief is particularly necessary because if Defendants receive notice of this Lawsuit, it is highly likely that they will transfer, conceal and/or destroy 1) the Counterfeit Products, 2) the means of making or obtaining such Counterfeit Products, 3) business records and 4) any and all other evidence relating to their infringing activities. (Drangel Dec., ¶ 12.) Moreover, they will likely hide or dispose of Defendants' Assets. *Id.* In light of the foregoing and considering that it typically takes noticed Financial Institutions and/or Third Party Service Providers a minimum of five (5) days to locate, attach and freeze Defendants' Assets and/or Defendants' Financial Accounts, Plaintiff respectfully requests that the Court order bifurcated service specifically allowing enough time for the Financial Institutions and/or Third Party Service Providers to comply with the TRO before ordering service on Defendants.

## II.    STATEMENT OF RELEVANT FACTS

The facts are contained in the factual declaration of Virgil Abloh and the attorney summarizing declaration of Jason M. Drangel, plus accompanying exhibits. *See* Abloh Dec.; Drangel Dec.; Complaint, Exs. A-C.  In the interest of brevity, any factual discussion is contained in the legal analysis below.[3]

## III.    ARGUMENT

## A.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

Determining personal jurisdiction over a foreign defendant in a federal question case requires a two-step inquiry.  First, courts must look to the law of the forum state to determine whether personal jurisdiction will lie. *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007)).  Second, if jurisdiction lies, the court then considers whether the district court's exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution.  *See id.*; *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  As alleged herein, Defendants' unlawful counterfeiting and infringing activities subject them to long-arm jurisdiction in New York under N.Y. C.P.L.R. § 302(a)(1).[4]  Furthermore, New York's exercise of jurisdiction over Defendants thereunder comports with due process.

---

[3] Although Plaintiff acknowledges that it seeks multiple forms of relief, in the interest of brevity and with respect for the Individual Rules and Practices in Civil Cases of each District Judge in the Southern District of New York, Plaintiff respectfully submits this memorandum of law in support of its Application.  Plaintiff will promptly provide supplemental briefing and/or oral argument on any issue should the Court request it.

[4] Plaintiff respectfully submits that Defendants are also subject to jurisdiction under § 302(a)(3).  *See Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 470 (S.D.N.Y. 2008).  However, this alternative analysis is omitted for brevity.  Plaintiff will promptly provide supplemental briefing and/or oral argument on any issue should the Court request it.

1.  **Defendants are Subject to Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1)**

Under § 302(a)(1), there are two requirements that must be met to establish personal jurisdiction: "(1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Licci*, 732 F.3d at 168 (quoting *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)).  In applying the test for the "transacts business" prong of § 302(a)(1), "New York decisions … tend to conflate the long-arm statutory and constitutional analyses by focusing on the constitutional standard," ergo, "a defendant need not be physically present in New York to transact business there within the meaning of [this first prong]," so long as the defendant has engaged in "purposeful activity," for example, "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Chloe v. Queen Bee of Beverly Hills*, *LLC*, 616 F.3d 158, 169-71 (2d Cir. 2010) (quoting *Best Van Lines, Inc.*, 490 F.3d at 246-247) (internal quotation marks omitted).  The second prong of § 302(a)(1) requires an "articulable nexus or substantial relationship between the business transaction and the claim asserted," however, "a causal relationship between the business transaction and the claim asserted" is not required. *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015) (citations omitted) (internal citations omitted) (internal quotation marks omitted).  Rather, it is sufficient that "the latter is not completely unmoored from the former." *Id.*

In determining whether a party has "transacted business," New York courts must look at the totality of the circumstances concerning the party's interactions with, and activities within, the state. *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000).  Whether the exercise of personal jurisdiction is permissible in the context of Internet activity is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the

Internet." *Id.* Courts in this Circuit have regularly conferred personal jurisdiction on a given defendant based on that defendant's operation of a fully interactive website through which consumers can access the site from anywhere and purchase products, as is the case with Defendants' User Accounts and Merchant Storefronts, and allow for customers all over the world to communicate with Defendants and view and purchase products, including Counterfeit Products, as demonstrated by the checkout pages completed by Epstein Drangel and Epstein Drangel's purchase of Counterfeit Products from a sampling of Defendants. *See* Drangel Dec., ¶¶ 21-22, Ex. A; *see also Chloe*, 616 F.3d at 170.

This Circuit has exercised jurisdiction over defendants under § 302(a)(1) where such defendants regularly offer for sale and sell goods through online marketplaces, "even though Defendants do not control their [] 'storefront' or its interactivity to the same extent that they control their own highly interactive website." *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15 Civ. 8459 (LGS), 2016 U.S. Dist. LEXIS 89149 *7 (S.D.N.Y. July 8, 2016) (quoting *EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458(JS)(ETB), 2012 U.S. Dist. LEXIS 78088 *8 (E.D.N.Y. June 4, 2012).[5] Jurisdiction is proper "for internet sellers who use an internet storefront like Amazon," when the Internet sellers are "commercial vendors who use it 'as a means for establishing regular business with a remote forum.'" *Id*. at *8. In *Lifeguard Licensing Corp.*, Judge Schofield held that a "website that does more than provide information about a product and allows customers to purchase goods online, is a 'highly interactive website,' which may provide a basis for personal jurisdiction under CPLR § 302(a)." *Id*. at *7. (citing *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) and *Grand v. Schwartz*, No. 15 Civ. 8779, 2016 U.S. Dist. LEXIS 61606 at *3 (S.D.N.Y. May 1, 2016) (holding that interactive commercial

---

[5] *See also supra* fn. 4.

websites provides support for jurisdiction pursuant to CPLR § 302(a)(1))). Moreover, "[r]egularly

offering and selling goods via an online marketplace such as Amazon.com can provide a basis for

personal jurisdiction under CPLR § 302(a), even though Defendants do not control their

Amazon.com 'storefront' or its interactivity to the same extent that they control their own highly

interactive website." *Id*. at *8. If a defendant

> wishes to operate an interactive website accessible in New York, there is no
> inequity in subjecting [that defendant] to personal jurisdiction here. If [a
> defendant] does not want its website to subject it to personal jurisdiction here,
> it is free to set up a passive website that does not enable [that defendant] to
> transact business in New York.

*Thomas Publ'g Co. v. Indus. Quick Search*, 237 F. Supp. 2d 489, 492 (S.D.N.Y. 2002).[6]

---

[6]This Court has repeatedly found personal jurisdiction over defendants based in China who are operating Merchant Storefronts on online marketplace platforms, such as Amazon, Alibaba, AliExpress, Wish, DHgate and eBay. *See, e.g.*, *Spin Master Ltd. and Spin Master, Inc. v. 18699055609@163.com, et al.*, No. 19-cv-6950-VM, Dkt. 19 (S.D.N.Y. Jul. 25, 2019); *Spin Master Ltd. and Spin Master, Inc. v. ACIPER, et al.*, No. 19-cv-6949-VSB, Dkt. 19 (S.D.N.Y. Jul. 25, 2019); *Ideavillage Products Corp. v. 60676, et al.*, No. 19-cv-6478-ER, Dkt. 18. (S.D.N.Y. Jul. 12, 2019); *Ideavillage Products Corp. v. ACCECITY2018 STORE, et al.*, No. 19-cv-6476-ER, Dkt. 19 (S.D.N.Y. Jul. 12, 2019); *Ideavillage Products Corp. v. 1superbest1, et al.*, No. 19-cv-6475-ER, Dkt. 18. (S.D.N.Y. Jul. 12, 2019); *WOW Virtual Reality, Inc. v. mineral_sg, et al.*, No. 19-cv-5478-CM, Dkt. 16 (S.D.N.Y. Jun. 12, 2019); *WOW Virtual Reality, Inc. v. 1737515714, et al.*, No. 19-cv-5476-CM, Dkt. 18 (S.D.N.Y. Jun. 12, 2019); *WOW Virtual Reality, Inc. v. Alwaysfaith International Trade Co., Ltd. (Huizhou), et al.*, No. 19-cv-5475-GHW, Dkt. 15 (S.D.N.Y. Jun. 12, 2019); *Allstar Marketing Group, LLC v. Learns babyshop, et al.*, No. 19-cv-4211-KPF, Dkt. 28 (S.D.N.Y. May 9, 2019); *Allstar Marketing Group, LLC v. 545756338, et al.*, No. 19-cv-4209-KPF, Dkt. 29 (S.D.N.Y. May 9, 2019); *Allstar Marketing Group, LLC v. Alice Wonder Household (Shanghai) Co., Ltd.*, No. 19-cv-4208-KPF, Dkt. 20 (S.D.N.Y. May 9, 2019); *Allstar Marketing Group, LLC v. activate2011store, et al.*, No. 19-cv-4204-KPF, Dkt. 20 (S.D.N.Y. May 9, 2019); *Spin Master Ltd., et al v. Alvy, et al.*, No. 19-cv-3452-LGS (S.D.N.Y. Apr. 24, 2019); *Allstar Marketing Group, LLC v. 178623, et al.*, 19-cv-3186-AJN (S.D.N.Y. Apr. 10, 2019); *Allstar Marketing Group, LLC v. 123 Beads Store, et al.*, 19-cv-3184-AJN (S.D.N.Y. Apr. 10, 2019); *Allstar Marketing Group, LLC v. bigbigdream320, et al.*, 19-cv-3182-AJN (S.D.N.Y. Apr. 10, 2019); *Off-White LLC v. Amazon001, et al.*, No. 19-cv-2067-JMF (S.D.N.Y. Mar. 7, 2019); *Off-White LLC v. Ali Jr., et al.*, No. 19-cv-1775-PAE (S.D.N.Y. Feb. 26, 2019); *Off-White LLC v. Adagio, et al.*, No. 19-cv-676-RA (S.D.N.Y. Jan. 24, 2019); *Off-White LLC v. Baoding Springru Trade Co., Ltd., et al.*, No. 19-cv-674-RA (S.D.N.Y. Jan. 24, 2019); *Off-White LLC v. 5hk5584, et al.*, No. 19-cv-672-RA (S.D.N.Y. Jan. 24, 2019); *Mattel, Inc. v. 2012shiningroom2012, et al.*, No. 18-cv-11648-PKC (S.D.N.Y. Dec. 13, 2018); *Mattel, Inc. v. 2013CheapBuy, et al.*, No. 18-cv-11647-PKC (S.D.N.Y. Dec. 13, 2018); *Mattel, Inc. v. betterlover, et al.*, No. 18-cv-11644-PKC (S.D.N.Y. Dec. 13, 2018); *Skyrocket, LLC d/b/a Skyrocket Toys LLC v. 5ATOY Store, et al.*, No. 18-cv-11280-AT (S.D.N.Y. Dec. 4, 2018); *Skyrocket, LLC d/b/a Skyrocket Toys LLC v. 2791383638, et al.*, No. 18-cv-11279-AT (S.D.N.Y. Dec. 4, 2018); *Spin Master Ltd. and Spin Master, Inc. v. 21CCN, et al.*, No. 18-cv-11086-RA (S.D.N.Y. Nov. 29, 2018); *Spin Master Ltd. and Spin Master, Inc. v. 13385184960@163.com, et al.*, Case No. 18-cv-10524-LGS (S.D.N.Y. Nov. 13, 2018); *Mattel, Inc. v. 276470, et al.*, No. 18-cv-10440-KPF (S.D.N.Y. Nov. 9, 2018); *Mattel, Inc. v. Aaron's Fashion Store, et al.*, Case No. 18-cv-10437-KPF (S.D.N.Y. Nov. 9, 2018); *Mattel, Inc. v. 1994_honeymoon, et al.*, No. 18-cv-10427 (S.D.N.Y. Nov. 9, 2018); *Ideavillage Products Corp. v. OhmyGod 1, et al.*, No. 18-cv-9999-RA (S.D.N.Y. Nov. 15, 2018); *Ideavillage Products Corp. v. 1yuyan1, et al.*, No. 18-cv-10000-NRB (S.D.N.Y. Oct. 30, 2018); *Moose Toys Pty LTD, et al. v. adition, et al.*, No. 18-cv-9262-AJN (S.D.N.Y. Oct. 10, 2018);

Further, in *EnviroCare Techs.*, the court held that "if a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business' in New York and is therefore subject to the court's jurisdiction." 2012 U.S. Dist. LEXIS 78088 at \*9 (citing *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) ("Generally, an interactive website supports a finding of personal jurisdiction over the defendant.")) Similarly, in *Chloe, supra*, the Second Circuit found that while the single act of shipping a counterfeit product might be sufficient to subject him to the jurisdiction of a New York court, it did not need to delve into such an inquiry as the defendant "operated a highly interactive website offering [counterfeit products] for sale to New York consumers." *Chloe*, 616 F.3d 158, 170.

In some circumstances, courts in the Second Circuit have found that "[t]he offering for sale of even one copy of an allegedly infringing item, even if no sale results, is sufficient to give personal jurisdiction over the alleged infringer under N.Y. CPLR § 302(a), subd. 1, 2 and 3." *Cartier v. Seah LLC*, 598 F. Supp. 2d 422, 425 (S.D.N.Y. 2009). In *McGraw-Hill Global Educ.*

---

*Allstar Marketing Group, LLC v. 24x7, et al.*, No. 18-cv-9043-JSR (S.D.N.Y. Oct. 3, 2018); *Mattel, Inc. v. 162275898, et al.*, No. 18-cv-8821-AJN (S.D.N.Y. Sept. 26, 2018); *WOW Virtual Reality, Inc. v. 2013\*passionate, et al.*, No. 18-cv-8071-VEC (S.D.N.Y. Sept. 5, 2018); *Ideavillage Products Corp. v. 711market, et al.*, No. 18-cv-7832-JMF (S.D.N.Y. Aug. 28, 2018); *Tapestry, Inc., et al. v. baoqingtianff, et al.*, No. 18-cv-7650-PAE (S.D.N.Y. Aug. 22, 2018); *Ideavillage Products Corp. v. longteng, et al.*, No. 18-cv-7329-AT (S.D.N.Y. Aug. 14, 2018); *Ideavillage Products Corp. v. 666668, et al.*, No. 18-cv-6850-CM (S.D.N.Y. July 31, 2018); *William Mark Corporation v. 1104520362, et al.*, No. 18-cv-6715-PAC (S.D.N.Y. July 26, 2018); *Ideavillage Products Corp. v. 207058772, et al.*, No. 18-cv-6512-VM (S.D.N.Y. July 19, 2018); *Ideavillage Products Corp. v. 29shyans2012, et al.*, No. 18-cv-6266-AT (S.D.N.Y. July 11, 2018); *Off-White v. 6014350 et al.*, No. 18-cv-5322-GBD (S.D.N.Y. June 13, 2018); *Intenze Products, Inc. v. 1586, et al.*, No. 18-cv-4611-RWS (S.D.N.Y. May 24, 2018); *William Mark Corporation v. 1&cc, et al.*, No. 18-cv-3889-RA (S.D.N.Y. May 2, 2018); *WOW Virtual Reality, Inc. v. Bienbest, et al.*, No. 18-cv-3305-VEC (S.D.N.Y. April 16, 2018); *Ideavillage Products Corp. v. abc789456, et al.*, No. 18-cv-2962-NRB (S.D.N.Y. April 11, 2018); *Ideavillage Products Corp. v. Aarhus, et al.*, No. 18-cv-2739-JGK (S.D.N.Y. April 11, 2018); *Moose Toys Pty Ltd. et al., v. 963, et al.*, No. 18-cv-2187-VEC (S.D.N.Y. April 2, 2018); *Off-White, LLC v. A445995685, et al.*, No. 18-cv-2009-LGS (S.D.N.Y. March 27, 2018); *Spin Master Ltd. and Spin Master, Inc. v. 158, et al.*, No. 18-cv-1774-PAE (Feb. 27, 2018); *JLM Couture, Inc. v. Aimibridal, et al.*, No. 18-cv-1565-JMF (S.D.N.Y. Feb. 21, 2018); *Spin Master Ltd. and Spin Master, Inc. v. Alisy, et al.*, No. 18-cv-543-PGG (S.D.N.Y. Jan. 22, 2018); *WowWee Group Limited, et al. v. Meirly, et al.*, No. 18-cv-706-AJN (S.D.N.Y. Jan. 26, 2018); *Ideavillage Products Corp. v. Dongguan Shipai Loofah Sponge Commodity Factory, et al.*, No. 18-cv-901-PGG (S.D.N.Y. Feb. 1, 2018).

*Holdings LLC v. Khan*, 323 F. Supp. 3d 488 (S.D.N.Y. 2018), this Court found personal jurisdiction where the defendant's website was "interactive" and allowed a buyer to submit an order online. *McGraw-Hill* cited to *Audiovox Corp v. S. China Enter., Inc.*, 2012 U.S. Dist. LEXIS 104656 at *3 (S.D.N.Y. Jul. 26, 2012) for the proposition that "if a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business' in New York and is therefore subject to the court's jurisdiction." *See also*, *Hsin Ten Enter.*, 138 F. Supp. 2d 449, 456 ("Generally, an interactive website supports a finding of personal jurisdiction over the defendant.").

Here, Defendants operate interactive Merchant Storefronts on DHgate, allowing New York consumers to inquire and communicate with Defendants, purchase goods, including Counterfeit Products, by and through Defendants' listings, and upon completion of a sale, ship goods to New York. The fact that Defendants have chosen to open their respective User Accounts for the purpose of selling Counterfeit Products through their Merchant Storefronts alone supports a finding that Defendants have intentionally used DHgate "as a means for establishing regular business with a remote forum." *EnviroCare Techs., LLC*, 2012 U.S. Dist. LEXIS 78088 at *10 (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1019 (9th Cir. 2008)). Moreover, the fact that Defendants are offering the Counterfeit Products through their Merchant Storefronts coupled with the fact that most of their User Accounts reflect multiple sales to consumers across the world, including repeat sales to consumers in the U.S., confirms that Defendants are sophisticated sellers operating commercial businesses through DHgate, such that they are subject to jurisdiction. *Id*. at *10.

It is highly likely that Defendants have shipped Counterfeit Products to consumers in New York based on the following: 1) Epstein Drangel completed a checkout page for an order of Counterfeit Products from each and every Defendant through an account associated with the New

York Address and/or provided the New York Address as the shipping address, 2) Epstein Drangel purchased Counterfeit Products from a representative sampling of Defendants to New York, 3) and all Defendants accept payment in U.S. dollars. (Drangel Dec., ¶¶ 21-22, Ex. A).

Nevertheless, whether a defendant physically shipped Counterfeit Products into New York is not determinative of whether personal jurisdiction exists, as courts in this Circuit examine a given defendant's online interactions with consumers in considering whether a particular defendant has transacted business in the forum state under § 302(a)(1). *Rolex Watch, U.S.A., Inc. v. Pharel*, 2011 U.S. Dist. LEXIS 32249, at * 6 (E.D.N.Y. Mar. 11, 2011). Plaintiff and Plaintiff's counsel have viewed Defendants' Counterfeit Products via their online User Accounts and Merchant Storefronts. (Abloh Dec., ¶ 19; Drangel Dec., ¶ 15.) Epstein Drangel then completed checkout pages for Counterfeit Products by providing the New York Address as the shipping address.[7] (Drangel Dec., ¶¶ 21-22, Ex. A.)   Further, Epstein Drangel purchased Counterfeit Products from a representative sampling of Defendants. *Id.*   Thus, Defendants' sophisticated commercial operations, specifically including their offering for sale and/or selling of Counterfeit Products through their highly interactive User Accounts and Merchant Storefronts on DHgate, Epstein Drangel's completion of checkout pages with the New York Address, Epstein Drangel's purchase of Counterfeit Products, along with Defendants' own representations on their Merchant Storefronts that they ship Counterfeit Products to the U.S., including New York, unequivocally establishes that Defendants conduct business within this District and the claims in this suit arise

---

[7] Under case law of the Second Circuit, when analyzing personal jurisdiction in the Internet context, "traditional statutory and constitutional principles remain the touchstone of the inquiry", and while a website's interactivity, "may be useful" for analyzing personal jurisdiction 'insofar as it helps to decide whether the defendant 'transacts any business' in New York,'" … "it does not amount to a separate framework for analyzing internet-based jurisdiction." *Best Van Lines, Inc.*, 490 F.3d at 252 (quoting *Best Van Lines, Inc. v. Walker*, No. 03 Civ. 6585 (GEL), 2004 U.S. Dist. LEXIS 7830, at *9 (S.D.N.Y. May 4, 2004) (internal citation omitted)).

from Defendants' business dealings and transactions with consumers in New York.[8] *Id.*

### 2. Exercising Personal Jurisdiction Over Defendants Comports with Due Process

Asserting personal jurisdiction over Defendants also comports with the Due Process Clause of the U.S. Constitution, as Defendants have "certain minimum contacts … such that maintenance of th[is] suit does not offend 'traditional notions of fair play and substantial justice.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Milliken v. Meyer*, 311 U.S. 457 (1940)). Defendants intentionally directed activity towards the New York market, thereby purposefully availing themselves of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (U.S. 1985); *Best Van Lines, Inc.*, 490 F.3d at 243; *see also* Drangel Dec., ¶¶ 21-22, Ex. A. Moreover, "as a practical matter, the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances of N.Y. C.P.L.R. § 302, and a foreign defendant meeting the standards of § 302 will satisfy the due process standard." *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008). Accordingly, Plaintiff respectfully submits that this Court has personal jurisdiction over Defendants in this action.

### B. PLAINTIFF IS ENTITLED TO AN *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Here, an *ex parte* order is essential to prevent immediate and irreparable injury to Plaintiff. A temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "it clearly appears from the specific facts shown by affidavit . . . that immediate and irreparable injury, loss or damage will result to the applicant before the adverse

---

[8] Plaintiff respectfully submits that the Court has jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2), which "provides for jurisdiction over a defendant if a claim arises under federal law, if the defendant is not subject to jurisdiction of the courts of general jurisdiction of any state, and if the exercise of jurisdiction is consistent with the Constitution and laws of the United States." *Lechner v. Marco-Domo Intnationales Interieur GmbH*, No. 03 Civ. 5664 (JGK), 2005 U.S. Dist. LEXIS 4022, *8 (S.D.N.Y. Mar. 10, 2005).

party or that party's attorney can be heard in opposition." Fed. R. Civ. P. 65(b).  Section 34 of the Lanham Act expressly authorizes this Court to issue *ex parte* restraining orders "with respect to a violation [of the Act] that consists of using a counterfeit mark in connection with the sale, offering for sale, or distribution of goods." 15 U.S.C. § 1116(d)(1)(a).[9]

Once a violation of the Lanham Act is demonstrated, the issuance of an *ex parte* order is appropriate upon showing that: (i) the plaintiff will provide adequate security; (ii) any order other than an *ex parte* order is not adequate to achieve the purposes of 15 U.S.C. § 1114; (iii) the plaintiff has not publicized the requested *ex parte* order; (iv) the plaintiff is likely to succeed on showing that defendants are using counterfeit marks; (v) an immediate and irreparable injury will occur if such *ex parte* order is not granted; (vi) the materials to be seized will be located at the place identified in the application; (vii) the harm to the plaintiff in denying the application outweighs the harm to defendants in granting the order and (viii) if prior notice was given, defendants would destroy, move, hide or otherwise make such matter inaccessible to the court. 15 U.S.C. § 1116(d)(4)(B).  As discussed below, Plaintiff meets each of the relevant criteria for the issuance of an *ex parte* temporary restraining order under the Lanham Act.[10]

An *ex parte* temporary restraining order is particularly warranted in cases, such as the instant one, involving offshore counterfeiters who conceal their identities and engage in unlawful and harmful activities over the Internet to avoid revealing their actual locations and identities. (Drangel Dec., ¶¶ 9-12, 23-24.)  Defendants, who, upon information and belief, are located in China and operate their businesses exclusively over the Internet, knowingly and willfully offer for

---

[9] Congress' purpose for enacting such *ex parte* remedies was to ensure that courts were able to effectively exercise their jurisdiction in counterfeiting cases and to prevent counterfeiters given prior notice from disappearing or quickly disposing of infringing inventory or records relating to their counterfeiting and illegal actions.  *See* Senate-House Joint Explanatory Statement on trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12080 (Oct. 10, 1984).
[10] Plaintiff has expressed its willingness to provide security in conjunction with the *ex parte* relief it seeks.  *See* [Proposed] Order, filed herewith.  Also, since Defendants' location and the location of the Counterfeit Products are unclear, Plaintiff is not requesting a seizure order in this Application. (Drangel Dec., ¶¶ 11-15, 26-27.)

sale and/or sell Counterfeit Products through their User Accounts and on their Merchant Storefronts on DHgate. (Abloh Dec., ¶¶ 18-19; Drangel Dec., ¶¶ 14-15, Ex. A.) The covert nature of Defendants and their counterfeiting activities make any order other than an *ex parte* temporary restraining order an exercise in futility. The immediate and irreparable harm to Plaintiff's business and reputation, as well as to the goodwill associated with the Off-White Marks, in denying its Application for an *ex parte* temporary restraining order greatly outweighs the harm to Defendants' interests in continuing to offer for sale and sell Counterfeit Products. (Abloh Dec., ¶ 22.)

"To obtain a preliminary injunction, a plaintiff must establish: '(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly' in its favor.'" *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005) (quoting *Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168, 173 (2d Cir. 2000)). The "standards which govern consideration of an application for a temporary restraining order… are the same standards as those which govern a preliminary injunction." *Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992). Plaintiff meets the standard for a preliminary injunction and the Court should enter a temporary restraining order.

1. **Plaintiff Will Suffer Irreparable Harm in the Absence of an Injunction Leaving Plaintiff with No Adequate Remedy at Law**

Defendants' infringing activities must be stopped immediately to prevent any further harm to Plaintiff. Not only does Plaintiff stand to suffer lost profits as a result of Defendants' competing, substandard Counterfeit Products, Defendants' illicit activities destroy the inherent value of the Off-White Marks, impair Plaintiff's reputation, dilute Plaintiff's brands and goodwill and negatively affect Plaintiff's relationships with its current customers as well as its ability to attract

new customers. (Abloh Dec., ¶ 22.)  While courts may no longer presume irreparable harm upon a finding of infringement, "[i]rreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither 'calculable nor precisely compensable.'" *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F.Supp.2d 515, 540 (S.D.N.Y. 2011).  Further, a plaintiff may still demonstrate that "on the facts of the case, the failure to issue an injunction would actually cause irreparable harm." *Salinger v. Colting*, 607 F.3d 68, 82 (2d Cir. 2010) (citing *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 393 (2006)).

This Circuit recognizes that irreparable harm sufficient to warrant a preliminary injunction exists where a defendant injected counterfeit versions of a plaintiff's products into the market. *CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 145 (E.D.N.Y. 2011).  Here, Defendants have sold substandard Counterfeit Products that look remarkably similar, if not identical, to the Off-White Products and which embody, bear and/or incorporate the Off-White Marks and/or identical or confusingly similar marks, thereby resulting in lost sales and impairing Plaintiff's "reputation that it has achieved through the expenditure of considerable time and effort." *Mitchell Grp. USA LLC v. Udeh*, No. 14-cv-5745, 2015 U.S. Dist. LEXIS 18801 at *8 (E.D.N.Y. Feb. 17, 2015) (quoting *N. Atl. Operating Co. v. Evergreen Distribs., LLC*, No. 13-CV-4974 (ERK) (VMS), 2013 U.S. Dist. LEXIS 147835, at *37 (E.D.N.Y. Sep. 27, 2013)); *see also* Abloh Dec., ¶ 22-23; Drangel Dec., Ex. B.

Moreover, Defendants' counterfeiting and infringing activities deny Plaintiff of its fundamental right to control the quality of the goods sold under the Off-White Marks. *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009). Defendants are offering their substandard Counterfeit Products in wholesale quantities and at significantly below-market prices

with which Plaintiff cannot compete given the high-quality materials and construction necessary to manufacture the Off-White Products. *See* Abloh Dec., ¶¶ 12, 22; *see also Zino Davidoff SA*, 71 F.3d 244.

Also, because Defendants' substandard Counterfeit Products are virtually indistinguishable from the Off-White Products, not only could any injury to consumers that results from use of Defendants' substandard Counterfeit Products be attributed to Plaintiff, thereby causing irreparable harm to Plaintiff in the form of unquantifiable lost sales, loss of goodwill and loss of control of its reputation with authorized licensees, retailers and consumers, but Plaintiff would also potentially be exposed to legal liability for any such injury to consumers. (Abloh Dec., ¶ 23; Ex. A.)  Thus, this factor weighs heavily in Plaintiff's favor.

## 2.  <u>Plaintiff is Likely to Prevail on the Merits of Its Lanham Act Claims</u>

In order to establish a likelihood of success on trademark counterfeiting and infringement claims, a plaintiff must show: (1) that its marks are valid and entitled to protection, and (2) that defendants' use of plaintiff's marks is likely to cause confusion. *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010).

First, the U.S. Trademark Registration certificates submitted in conjunction with this Application provide *prima facie* evidence of both the validity of the Off-White Marks as well as Plaintiff's ownership of the same. 15 U.S.C. § 1057(b). (Abloh Dec., ¶¶ 8-10, Ex. B.)

Second, a proper likelihood of confusion inquiry generally involves an analysis of the factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.* 287 F.2d 492, 495 (2d Cir. 1961).  Yet, "where counterfeit marks are involved, it is not necessary to conduct the step-by-step examination of each *Polaroid* factor because counterfeit marks are inherently confusing." *Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010) (internal citations omitted).

Instead, "[t]he court need only determine the more fundamental question of whether there are items to be confused in the first place -- that is, whether the items at issue . . . are, in fact, counterfeit and whether [d]efendants sold those items, or offered those items for sale." *Id*. at 383 (internal citations omitted). Regardless, even if a *Polaroid* analysis were necessary, a straightforward application of the test demonstrates that likelihood of confusion exists in this case.

Finally, because Plaintiff has shown that it is likely to prevail on its trademark counterfeiting and trademark infringement claims, it has also shown that it likely will prevail on its claims for false designation of origin, passing off and unfair competition. *Richemont N. Am., Inc. v. Linda Lin Huang*, No. 12 Civ. 4443 (KBF), 2013 U.S. Dist. LEXIS 136790, at *14-16 n.15 (S.D.N.Y. Sep. 24, 2013).

### 3.  **Plaintiff is Likely to Prevail on Its State Law Claims**

Because Plaintiff has shown a likelihood of success on its Lanham Act claims, Plaintiff has also shown a likelihood of success on its unfair competition and unjust enrichment claims under New York State law. *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 521 (S.D.N.Y. 2013).

### 4.  **The Balance of Hardships Favors Plaintiff**

The balance of hardships unquestionably and overwhelmingly favors Plaintiff. Here, as described above, Plaintiff has suffered, and will continue to suffer, irreparable harm to its business, the value, goodwill and reputation built up in and associated with the Off-White Marks and to its reputation as a result of Defendants' willful and knowing sales of substandard imitations of the Off-White Products. (Abloh Dec., ¶ 22.) Any harm to Defendants would only be the loss of Defendants' ability to continue to offer their Counterfeit Products for sale, or, in other words, the loss of the benefit of being allowed to continue to unfairly profit from their illegal and infringing

activities. "Indeed, to the extent defendants 'elect[] to build a business on products found to infringe[,] [they] cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Broad. Music, Inc. v. Prana Hosp.*, Inc., 158 F. Supp. 3d 184, 196 (S.D.N.Y. 2016) (internal citation omitted).

### 5.  Enjoining Defendants from Using the Off-White Marks Will Serve the Public Interest

The public interest will be served by the issuance of a temporary restraining order and preliminary injunction, as "the public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010). Here, the public has an interest in being able to rely on the high quality of Off-White Products bearing and/or sold in connection with the Off-White Marks. (Abloh Dec., ¶ 22.) Since Defendants have willfully and knowingly inserted substandard Counterfeit Products into the marketplace, the public would benefit from a temporary restraining order and preliminary injunction halting any further sale and distribution of Defendants' Counterfeit Products. (Drangel Dec., ¶¶ 14-15, Ex. A.)

### C.  PLAINTIFF IS ENTITLED TO AN ORDER 1) PREVENTING THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING DEFENDANTS' MERCHANT STOREFRONTS

### 1.  Defendants' Assets Must be Frozen

Considering the nature of Defendants' counterfeiting businesses, and Plaintiff's showing that it has a high likelihood of succeeding on the merits of all of its claims, Plaintiff will be entitled to an equitable accounting of Defendants' profits from their sales of Counterfeit Products. Plaintiff's request for an asset freeze order granting Plaintiff information regarding the location of Defendants' Assets, the attachment of Defendants' Assets and an injunction preventing the transfer from or to Defendants' Financial Accounts by the Financial Institutions and Third Party Service

Providers is both necessary and appropriate, and is within this Court's discretion to preserve Plaintiff's right to the relief sought in the Complaint. *See* 15 U.S.C. § 1117(a).[11]

District courts have "authority to freeze those assets which could [be] used to satisfy an equitable award of profits." *North Face Apparel Corp. v. TC Fashions, Inc.*, 2006 U.S. Dist LEXIS 14226, at *10 (S.D.N.Y. Mar. 30, 2006) (internal citation omitted). In doing so, a court "may exempt any particular assets from the freeze on the ground that they [are] not linked to the profits of allegedly illegal activity." *Id.* at *11. The onus is on "the party seeking relief [from any such asset freeze] to 'present documentary proof'" that its profits aren't from such illegal activity. *Id.*

Under 15 U.S.C. § 1117(a) and 17 U.S.C. § 504(b), a plaintiff in an action arising thereunder is entitled to recover a defendant's profits derived from the counterfeiting and/or infringement and/or plaintiff's damages. *See Gucci Am. v. Bank of China*, 768 F.3d 122, 131-132 (2d Cir. 2014) (A copyright and/or trademark "infringer is required in equity to account for and yield up his gains to the true owner," and "profits are then allowed as an equitable measure of compensation."). Specifically, with respect to claims involving the infringement of federally registered copyrighted works and/or those arising under the Lanham Act, it has been established in this Circuit, as well as sister circuits, that district courts have the authority to issue a prejudgment asset restraint injunction in favor of plaintiffs seeking an accounting and/or another equitable remedy against allegedly infringing defendants. *Warner Bros. Entm't Inc. v. Doe,* No. 14-CV-3492 (KPF), 2014 U.S. Dist. LEXIS 190098 (S.D.N.Y. May 29, 2014).

An asset freeze in the instant matter is unquestionably warranted because Defendants, who are foreign individuals and/or entities based in China, are manufacturing, importing, exporting,

---

[11] *See also*, *e.g.*, *Balenciaga Am., Inc. v. Dollinger*, No. 10 Civ. 2912 (LTS), 2010 U.S. Dist. LEXIS 107733, at *22 (S.D.N.Y. Oct. 8, 2010).

advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers solely via the Internet, and accepting payment for such Counterfeit Products in U.S. Dollars through Financial Institutions, thereby causing irreparable harm to Plaintiff in the form of lost sales, loss of goodwill and loss of control of its reputation with licensees, retailers and consumers, and can, and most certainly have the incentive to, transfer and hide their ill-gotten funds if their assets are not frozen. *See* Abloh Dec., ¶ 22; *see also Dama S.P.A. v. Doe*, No. 15-cv-4528 (VM), 2015 U.S. Dist. LEXIS 178076, at *4-6 (S.D.N.Y. June 12, 2015).[12] Therefore, Plaintiff respectfully submits that this Court should exercise its inherent equitable power and freeze Defendants' Assets and Defendants' Financial Accounts for the purpose of preserving Defendants' funds and ensuring that a meaningful accounting of their profits can be made.[13]

### 2. Defendants' User Accounts and Merchant Storefronts Must be Frozen

A temporary restraining order which, in part, restrains the Third Party Service Providers from providing services to Defendants' User Accounts and Merchant Storefronts is warranted and necessary because the continued offering for sale and/or sale of the Counterfeit Products by Defendants on their Merchant Storefronts will result in immediate and irreparable injury to Plaintiff. *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 126 (2d Cir. 2014); *AW Licensing, LLC v. Bao*, No. 15-CV-1373, 2015 U.S. Dist. LEXIS 177101, at *3 (S.D.N.Y. Apr. 1, 2015).

### D. PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE OF PROCESS BY ELECTRONIC MEANS

Fed. R. Civ. P. (4) governs service on Defendants in the instant matter since, upon

---

[12] *See also supra* fn. 2.
[13] Upon the entering of an asset freeze, Plaintiff also requests that the Court Order Defendants and/or the Financial Institutions and/or the Third Party Service Providers to immediately identify Defendants' Assets and Defendants' Financial Accounts and the respective current account or fund balances of the same.

information and belief, they are located in China. While Defendants operate sophisticated commercial businesses, they are limited to correspondence by email, messaging through their respective User Accounts and communications otherwise transmitted over the Internet. Plaintiff therefore respectfully requests that this Court issue an order granting it permission to serve each respective Defendant via the following combination of electronic methods: 1) registered electronic mail and 2) messaging through Defendants' User Accounts and 3) website publication.

Plaintiff may serve international defendants pursuant to Fed. R. Civ. P. 4(f)(3), which enables a court to grant an alternative method of service so long as it: "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 U.S. Dist. LEXIS 11480, at *7 (S.D.N.Y. Feb. 8, 2009). Notably, "[s]ervice under subsection [4(f)] (3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant." *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 330 (S.D.N.Y. 2015). Since third-party merchants on DHgate, like Defendants, have been known to use aliases, false addresses and other incomplete identification information to shield their true identities and there are, in fact, only partial, incomplete or no physical addresses whatsoever associated with the majority of Defendants' User Accounts, this is exactly the circumstance where the courts should exercise, as they previously have,[14] the authority to grant alternative methods of service. *Id*. "The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *Id*.[15]

---

[14] *See Dama S.P.A.*, 2015 U.S. Dist. LEXIS 178076, at *6-7; *AW Licensing, LLC*, 2015 U.S. Dist. LEXIS 177101, at *18-19; *FTC v. PCCare247 Inc.*, 2013 U.S. Dist. LEXIS 31969, at *20 (S.D.N.Y. Mar. 7, 2013).

[15] Pursuant to Fed. R. Civ. P (4)(1), service may be effected "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents" ("Hague Convention"). Although China is a signatory to it, the Hauge Convention "shall not apply where the address of the person to be served with the document is not known." *See* Hague Convention, November 15, 1965, Article 1. Moreover, despite China's objection to service by postal channels under

In the instant matter, Plaintiff proposes using Outlook.com as well as Rmail (www.rmail.com), an online service that confirms valid proof of authorship, content, and delivery of an email, as well as the official time and date that the email was sent and received. (Drangel Dec., ¶ 28.)  Along with service via email, Plaintiff respectfully requests that the Court, in its discretion, permit service via website publication.[16]

Ultimately, service on Defendants by various electronic means comports with due process, as it is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 309 (1950).  None of the Defendants have disclosed their mailing addresses. (Drangel Dec., ¶¶ 9-12, 23-24.)  Due to Defendants' purposeful anonymity, service by email, with confirmation of delivery by Rmail, and website publication is most likely to provide Defendants with proper notice of this action and Plaintiff's claims. *Dama S.P.A.*, 2015 U.S. Dist. LEXIS 178076, at *7.  Therefore, Plaintiff respectfully submits that an order authorizing alternative service benefits all parties and the Court by ensuring that Defendants receive immediate notice of the pendency of this action to move forward expeditiously.[17]

### E.  PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING EXPEDITED DISCOVERY

Additionally, Plaintiff respectfully requests that the Court order expedited discovery from Defendants, Financial Institutions and Third Party Service Providers regarding the scope and

---

Article 10, this Court has held that such objection does not include service by email and further, that service by email is not prohibited by any international agreement.  *Sulzer Mixpac AG*, 312 F.R.D. at 332.

[16] Publication on a website has been deemed appropriate service under Fed. R. Civ. P (4)(3) "so long as the proposed publication is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *National Association for Stock Car Auto Racing, Inc. v. Does*, 584 F. Supp. 2d 824, 826 (W.D.N.C. 2008) (quoting *Mullane*, 339 U.S. at 315-16).

[17] Plaintiff also respectfully submits that the Court issue an order authorizing Plaintiff to serve the Financial Institutions and/or Third Party Service Providers with notice of the Court's order of the Application via electronic means prior to serving Defendants and with enough time for the Financial Institutions and/or Third Party Service Providers to comply with the Court's order to help expedite the process.

extent of Defendants' counterfeiting and infringing activities, as well as Defendants' account details and other information relating to Defendants' Financial Accounts, Assets and/or any and all User Accounts and or Financial Accounts with the Third Party Service Providers, including, without limitation any and all websites, any and all User Accounts and any and all Merchant Storefronts, including, without limitation, those owned and operated, directly or indirectly, by the Third Party Service Providers and the Financial Institutions.

Generally, a party may not seek discovery prior to a Rule 26(f) conference unless authorized by a court order. Fed. R. Civ. P. 26(d)(1). In the past, Courts in this District have often applied a four-factor test to determine when expedited discovery may be granted,[18] but now apply a more flexible "good cause" test to examine "the discovery request . . . on the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005) (internal citation omitted). Regardless of which test, Plaintiff has established that it is entitled to the expedited discovery requested for good cause shown. *See id*. at 327.

### F. PLAINTIFF'S REQUEST FOR A SECURITY BOND IN THE AMOUNT OF $5,000 IS ADEQUATE

In determining the amount of the bond that a moving party must post, this Court is "vested with wide discretion." *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996). Plaintiff respectfully submits the provision of security in the amount of $5,000 is sufficient. *Rovio Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store, et al.*, No. 17-cv-4884-KPF (S.D.N.Y. June 28, 2017).[19]

---

[18] *See Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.*, No. 94 Civ. 5620 (JFK), 1994 U.S. Dist. LEXIS 18457, at *7 (S.D.N.Y. Dec. 28, 1994).

[19] Moreover, this Court has gone as far as to hold that no security bond is necessary in similar circumstances. *See Mattel, Inc. v. 86755, et al.*, No. 18-cv-8825-RJS-JSR (S.D.N.Y. Oct. 4, 2018) (The Hon. Richard J. Sullivan held that no security bond was necessary because "it strikes me almost as fairly arbitrary.")

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that its Application be granted

*ex parte* in its entirety.


Dated:  April 23, 2021                              Respectfully submitted,

                                                    EPSTEIN DRANGEL LLP


                                    BY:    _____
                                                    Jason M. Drangel (JD 7204)
                                                    jdrangel@ipcounselors.com
                                                    Ashly E. Sands (AS 7715)
                                                    asands@ipcounselors.com
                                                    Brieanne Scully (BS 3711)
                                                    bscully@ipcounselors.com
                                                    Danielle S. Yamali (DY 4228)
                                                    dfutterman@ipcounselors.com
                                                    60 East 42nd Street, Suite 2520
                                                    New York, NY 10165
                                                    Telephone:    (212) 292-5390
                                                    Facsimile:    (212) 292-5391

                                                    Brian Igel (BI 4574)
                                                    bigel@bilawfirm.com
                                                    BELLIZIO + IGEL PLLC
                                                    One Grand Central Place
                                                    305 Madison Avenue, 40th Floor
                                                    New York, New York 10165
                                                    Telephone:  (212) 873-0250
                                                    Facsimile:   (646) 395-1585
                                                    *Attorneys for Plaintiff*
                                                    *Off-White LLC*